The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and its honorable court. Please be seated, ladies and gentlemen. We have five cases on the calendar this morning. Two government employee cases, one of which is submitted only in the briefs and will not be argued. A government contract case from the Armed Services Board of Contract Appeals. And two patent cases from the district courts. First case is, and you may have some trouble with pronunciation, Roxoliana Dachniwsky v. OPM and Teresa Dachniwsky. And Ms. Bobak, will I argue first? Yes. 2011-3158. Please proceed. And incidentally, we don't normally call, refer to litigants' parties by their first names. But I trust you'll excuse us if we do today because we're talking about contending parties with the same last name. Correct, yes. I understand. I understand. Good morning, your honors. May it please the court. My name is Janice Bobak and I'm here representing Ms. Roxoliana Dachniwsky, the appellant in this case, who fortunately was able to be present with us today. I know you're all conversant with the facts, so I would like to speak right away to the underlying decision of the Merit System Protection Board that brought us here today. The contested fact is who is the proper beneficiary to Myron Dachniwsky's survivor annuity. So in essence, it's which wife should prevail. Myron Dachniwsky, as you know, was divorced from his wife in 1998, and he also remarried in 1998. He passed away 11 years later, and when his first wife that he had divorced filed a petition asking for benefits from OPM, it was denied. It was denied because Teresa Dachniwsky had suggested that she was eligible for benefits based upon their divorce decree. The divorce decree did not provide her any rights to a survivor benefit, and that was later agreed to by all parties that there was nothing... Can you just focus this in on where you're here telling us that the board erred in its determination. What was its error, and how do we get around the deferential standard of review in regards to that error? Well, the final order from the board after the appeal, in our opinion as our brief state, indicates that the notice was deficient, and because the notice was deficient and the divorce terminated the election, that there was certainly a meaning by Myron to intend to elect her. Now, the notice was deficient, so it didn't tell him that a divorce had terminated his election, but it was also deficient to the fact that it didn't tell him that her election had continued. So the final order is certainly not in accordance with the law, and it's unsupported by the substantial evidence because the record that was before the board had been supplemented. This is also a case where there were some missing documents. Let me just focus here. Okay. So we all agree that the notice was deficient, and the question then is what? As a matter of law, we have to look at, we're only left with the intent of the party? Absolutely. Because the notice was deficient, they say that it's assumed that he intended, because of the increase or the deduction in his retirement benefit, he was paying a premium. So we're disputing whether or not all the facts as we know them and the documentation and so forth point us to the fact that he intended, given the failure of the notice, to award it to the second wife as opposed to the previous wife. That's exactly our contention, and the documents in the record make it very clear that he wrote several notices, he wrote several letters, he responded. It was between a period of 2002 and 2006. But given that you've got a deficient notice, isn't the kind of presumption in terms of what his intent was, since he made no change, and the first designee was his former wife, and it wasn't just my wife, it was my wife naming her, that that's sufficient intent to sort of weigh it in her favor? I think the intent at the time that he named her, that was certainly his intent. But he named her, and then he didn't change her. Those are the facts. He didn't change her, and I presume because his notice was deficient, it did not tell him that a divorce terminated that election. He presumed in the divorce decree, I have to assume, that he didn't have to do anything, that the divorce gave her no benefits, gave her no right to have that election. So because he wasn't notified properly what he had to do, he also wasn't notified properly that he didn't have to do anything. So he assumed that the survivorship that he had previously designated for his first wife would automatically then, it wasn't specific with respect to an individual, it was only with respect to his current wife? I do believe that his assumption was because the divorce decree made no provisions for her, that it terminated, and he wasn't notified otherwise. So he also understood from a letter from OPM that he had a duty to provide copies or documents if he wanted to name his new spouse, which he did. And I think it's reasonable to assume that if it's his benefit, and he wanted to name her as a beneficiary, he could have done so right away. What does the Simpson case do for you? The Simpson case is, and it's interesting how the cases have developed over time. The Simpson case says that the notice is insufficient and a predetermination before you get divorced, it has to be told. You have to have a, you have to, the divorce is going to terminate any election you made. That's exactly what his notice did not say. So that case tells us that although there was no remarriage in that case, and if you look at how the cases have developed over the years, most of them, until we get to the Allen case and Hernandez, there's no remarriage. So because the notice was insufficient, because he didn't make a new election, but there was no other evidence. So you agree, I mean, Simpson doesn't help you. You're saying it doesn't hurt you because it really didn't deal with the facts in your case. Correct. It didn't deal with the facts in our case, and it didn't deal with all the extraordinary, outstanding evidence that we had of Mr. Dashnowski's intent. Because if you look at his writings, I mean, he clearly intended to name his current spouse, Roxiliana, as his beneficiary. So the Simpson case, there was no outlying manifestation of his intent at any point. And I think it's also significant that there was no remarriage. So he was continuing to receive a reduced amount. So he certainly was paying for someone to get that benefit, and he didn't elect not to terminate that, but he wasn't remarried again. So he could not have assumed it could have been for someone else, because there was no remarriage. So which I think is what is significant when we look at the case law, is that there's not remarriages until you get to the Allen case or the Hernandez case. Can I ask you, just in terms of the way things went down, if you're correct, that he would assume from the get-go that the survivor annuity would have just transferred once he got a different wife, why did he ever go to – I mean, eventually he got to going to OPM to ask them to do anything. Well, if you're right about his assumption, why would he have ever contacted OPM in the first years down the road? And maybe – I'm not saying his assumption was that his new wife was automatically a beneficiary. I'm saying his assumption was his divorce decree did not provide this benefit to his ex-wife. So when they divorced and they divided their property, and I think it's clear that his retirement pension was marital property, none of it was awarded to her, I think that's the assumption that Mr. Daschnowski would have made. Not that his new wife automatically got it, but I do think he had a duty, and I do think he probably knew, I got to send my paperwork in, I got to let OPM know I was remarried, but he probably thought, I'll do it tomorrow, or I have time, or I'll get my things in order. But he did not know, he was not notified either way that he had a time frame or he had a time limit. But when he did get the letter, they said, okay, send it. They didn't say there's a time limit. They didn't say Theresa Daschnowski was still the beneficiary. None of that was mentioned to him. You're saying it started with OPM's failure and should end with Marvin several times indicating that he wanted your client to win. I believe that's absolutely correct. I believe if those documents would have made it into the record when Ms. Julia Packard, Honorable Judge Julia Packard, made that initial determination, it would have been different. Because she said, nowhere in the record is there any indication that he wanted Roxiliana to be the beneficiary. And that just wasn't true. Unfortunately, she didn't have the necessary documents. Now, my client, Roxiliana, did supply those documents to Judge Julia Packard on her own. She was pro se. She did not have a lawyer at that time, and she was representing herself. OPM did not have those same documents in the record that they provided Judge Packard. When did they get the documents? They got the documents when there was a cross-appeal by OPM, and then there was an appeal by Roxiliana. And that would have been in... So this is between the age Julia and the board. It was between July 2010, decision from Judge Packard, and April 19, 2011. So at that time, the board demanded OPM get their file together and get it to the board so that they can have a complete record. So were those documents, the communications between OPM to the deceased and back, where they said, this is what you have to do, and he did it, were those before the administrative margin? They were before Judge Julia Packard in an informal way. They were faxed to her from Roxiliana as a pro se litigant. They were not from OPM's file. Are they in the record? They are in the record because subsequent to Julia Packard's decision, OPM was required to... No, no, no, no. Are that facts? Is that in the record? I didn't see it when I went through. Is the fact that Roxiliana faxed it? Yeah, is that faxed in the record? Where is it in there? The fax is in the record. I missed that. It's attached to our brief as exhibits. You can find it on your reply while you're waiting for the government. I want to take your time out. Okay, I'll find it for you in my reply, Your Honor, and give you that information. But she did supply those documents. She supplied them pro se on her own. And then when Judge Packard made her decision, she apparently discounted that, maybe because it came pro se, maybe because it wasn't part of the record. And then when OPM realized that it wasn't part of the record that they had supplied, they did write a letter and a cross appeal in asking them to consider the documents. And they presented more in addition to what Roxiliana had provided. They even gave more, but some of the same documents. If you wanted to save rebuttal time, you want to hop through that period. Do you want to continue or save it? I will save it, Your Honor, if you have no further questions. Thank you. Ms. Stern. Good morning, Your Honor. We're going to take eight minutes. Yes. The Board erred as a matter of law in this case. But just to be clear, you're on her side. Yes, this is a very unusual circumstance. We are, but it is the position. It's on the Board's side. I assumed that. Okay.  This, of course, is the position that OPM has taken consistently before the Board, both in terms of awarding the benefits at the administrative level and also representing the government at the MSPP. The OPM has consistently taken the position that Roxiliana is entitled to the survivor annuity. And in this case, the Board erred as a matter of law because the Board erroneously found that the notice provided to the retiree was sufficient to notify him as to his rights and obligations with respect to providing survivor annuity for his new wife. Yes, but that decision was inconsistent with this Court's decision in Simpson. They did find one of the notices was insufficient, right? The notice was the same that was provided in both years. The Board said that that notice was insufficient, according to this Court's decision in Simpson, but only with respect to the retiree's rights and obligations with respect to his former wife. The same exact notice. The Board looked at that same exact notice and said it's sufficient with respect to notifying him of his rights and obligations with respect to his new wife, even though the paragraph pertaining to former spouses and new spouses had virtually the same language. Both paragraphs suffered from the defect that this Court identified in Simpson and in Hernandez. Both paragraphs failed to inform the retiree that his prior spousal survival benefit election was voided upon his divorce and that if he wanted to provide a spousal survivor annuity, he had to make a re-election. So the Board erred because it found that the notice was deficient, that was correct, as to Mr. Dasznowski's rights and obligations with respect to his former wife. Thank you. But somehow, inexplicably, found that the exact same notice and virtually the same exact language was sufficient when it came to Myron's second wife. Is there no concept of detrimental reliance in these circumstances? And the deceased receives a letter saying this is what you have to do. And as far as I can see from the record, he does it. And then he's told, good, that's sufficient. Well, detrimental reliance is sort of an estoppel. I know. Normally estoppel does not apply against it. But we don't need to go there because this Court has already held that this notice, that the language in this notice is insufficient. And the Board erred when it found that it was sufficient. So the Board should have looked to see what… Well, they held, I mean, as you described, they kind of split it. And they said it's sufficient for one purpose but insufficient for the other. Has we held anything with regard to the sufficiency of this notice yet? Well, yes, the Court has held that the language in this notice, which is basically the Simpson language, is insufficient as to a former spouse who the employee has divorced. The Court has not addressed the question of whether it's insufficient with respect to a new spouse. The Board, however, and this is also inexplicable, the Board's own precedent, which we cited in our brief as the Allen case, did deal with a newly married spouse and very same language. And in that case, the Board said that the language was, pursuant to Simpson, insufficient to notify the retiree as to his rights and obligations as to the new spouse. So in this case, clearly the Board should have done the same thing. It should have said the notice was deficient, insufficient to notify Myron of his rights and obligations with respect to Roxoliana. That would have then required the Board to look at Myron's intent with respect to Roxoliana. And the evidence would have been overwhelming. Every affirmative communication he had indicated he wanted Roxoliana to get those benefits. But you're saying that, I mean, the Board would have been correct to say the notice was deficient with regard to everyone. Yes, absolutely. But then you look at intent. Exactly. Exactly. They should have said it was deficient with respect to everyone, and then they should have looked at his intent across the Board. They didn't. They only looked at his intent with respect to Teresa. They never even got to the issue of his intent with respect to Roxoliana. And they are two separate questions. When we do an intent inquiry, what timeframe do we pick? What is the relevant timeframe for the intent inquiry? Well, I think the Court's decision suggests that the relative timeframe is the entire timeframe up until the time that the individual died. Because if the individual was still alive, they would have that moment that the litigation wouldn't arise. What if hypothetically, in this scenario, for the first few years after he married his second wife, he does nothing? There's no evidence of intent for the next five years. And it could be that suddenly five years down the road, which clearly would have been insufficient with regard to the two-year timeframe, he suddenly changes his mind. And he says, oh, I've changed my mind. I want my second wife to get it, not my first. What would we do in that scenario? I mean, there's a different intent with respect to the various time periods. Right. But the time period, of course, gets waived when the notice is deficient. So we're not limited to the two-year time period. And we can only look at his overall intent. So the fact that he allowed it to go for those years would be weighed against his affirmative expression of intent. And in this case, although, yes, there was a period of time that he allowed or reduced annuity to continue, every single affirmative communication that this man had with OPM, every single one, was, I want Roxanne Leana to get the benefit. Every single one. And every time OPM came back to him and said, okay, well, then if that's what you want, you have to sign the bottom of this form and send it back to him, he did that. Every time he had a chance to put her name, he did that. So when you're looking at, and again, the board didn't really get to the issue of intent with respect to Roxanne Leana because of their error with respect to the notice. But if this court gets to that issue of intent, it's just overwhelmingly clear that every communication, every affirmative communication that he had with OPM was to say, I want Roxanne Leana to get these benefits. Thank you, Ms. Stern. Thank you, Your Honors. We will now hear from Mr. if I pronounced it correctly, Korczak. That's correct, Your Honor. Thank you very much. You may please the court. There are two separate and distinct aspects to this case, two separate and distinct cases, if you will. The first case is whether or not Roxanne Leana, whom Myron married after his retirement, is entitled to Myron's survivor benefits. And the second case is whether or not Teresa, whom Myron divorced, is entitled to Myron's survivor benefits. Because these cases are separate and distinct, they must be analyzed separately. But only one can be entitled, right? That's true. So the answers have to be consistent. That's also true. Now, this court in Wood, Hernandez, and Hairston applied a two-fold analysis. First, he looked at the notices. And if the notices that the annuitant received are insufficient to inform him of the steps he is to take and the time in which he is to take them in order to designate a survivor beneficiary, then this court looks to evidence of the annuitant's intent. So applying this analysis in Roxanne Leana's case, the Merit Board looked at the notices and found them to be sufficient to inform Myron of what he must do to designate a spouse whom he married after his retirement and when he had to do it, namely within two years after the marriage. Having found that Myron did not inform OPM of his election within the two-year limitation period, the board agreed with the administrative law judge that Roxanne Leana was not entitled to benefits. This was dispositive of the issue. There was no need, then, to look at the evidence of Myron's intent with regard to Roxanne Leana, whom he married after his retirement. This disposition was proper under the law. Applying the same analysis to Teresa's case, the board found that the notices were insufficient to inform Myron of the fact that his divorce terminated his election to have Teresa as his survivor and that he must re-elect her to have a beneficiary within two years of his divorce. Because the notices were insufficient, the board looked to evidence of Myron's intent with respect to Teresa and found that he knew that he was continuously receiving a reduced benefit and took no affirmative steps to change that until some four and a half years after the divorce and remarriage. And even then, Myron continues to manifest his intent to have Teresa remain as his survivor beneficiary. Looking at the 2002 correspondence from OPM to Myron disallowing his request to elect his spouse whom he married after his retirement, we clearly see, and that's at 834 and 835 of the petitioner's brief. We clearly see that Myron's given purportedly the opportunity to express his intention to terminate, to eliminate Teresa as his beneficiary. He is told exactly what to do and when to do it, and he does nothing. His intent with respect to Teresa remains unchanged after he is informed that he cannot designate Roxalana as his beneficiary. He does not terminate Teresa's rights to his annuity, apparently given the opportunity. Here's how you can eliminate Teresa. He does nothing. In 2002, Myron and the OPM are under the impression that Teresa is the beneficiary. Myron does nothing to change that and continues to receive reduced benefits. He does nothing to attempt to change that until 2006, eight years after the divorce and remarriage, three and a half years after the 2002 correspondence, 16 years after his retirement. And his attempt to replace Teresa with Roxalana is simply too late. And in the face of that, his intent with regard to Teresa continues to remain unchanged. His intent with regard to Roxalana should not be equated with his intent with regard to Teresa. To do this, as the petitioner and respondent seem to do, confuses the issue because these are separate and distinct issues. How can you say they're separate and distinct? As I think Judge Rory alluded to a few minutes ago, you're not suggesting he either had intent to give it to one or the other or to neither. He can't have an intent to have given it to both. That's really not possible. Your Honor, his intent is to switch wives, to change from one to the other. When he's told he can't do it, he continues in his intent to allow Teresa to stay on. He continues to receive reduced benefits. So we have to ignore all the documentation and everything that really does – I mean, there are certain things in this record that clearly point to an intent with regard to his second wife, right? So we are to ignore those? No, those are done outside the two-year limitation. And even then he continues to do anything. I would just point to the fact – This is a two-year limitation excused by OPM's failure. Not with regard to Roxolana because the notice was sufficient with respect to Roxolana and what he had to do with respect to Roxolana. And you say the notice was sufficient despite the fact that it was the same as the deficient notice for all three. Well, that's because – I mean, I don't think that's the law. The law isn't that if the notice doesn't inform you of what to do after divorce or after death, it doesn't vitiate the whole notice. It doesn't invalidate the whole notice. With respect, I haven't found that anywhere in the case law. And I think that's what the board did. The board looked at the notice and said, okay, bad with regard to Teresa, good with regard to Roxolana. Well, we're talking about the same thing, right? I mean the question of whether he had noticed that within two years when you get a divorce, your previous designation terminates and you have to redesignate if you want someone else to do it instead. That's all part of the same thing. It's not this part deals with what happened 20 years ago, and this part deals with something entirely different. How do we parse out the different pieces of it when it's all really about the same thing? What happens two years, what you have to do within two years when you get a divorce and you get a new wife? Well, I think, Your Honor, it's parsed out in the notice itself. It says what you have to do for survivor benefits to the spouse you were married to at the time of the retirement, what you have to do for – Is that notice in its entirety in the record? Yes, Your Honor. In fact, the court asked for it in an April 2012 order, and it was provided to the court by OPM. And it's got four separate sections. Survivor benefits for a spouse you were married at retirement. Survivor annuity benefits for a spouse you married after retirement. The deficiency doesn't tell you what to do after your divorce. It doesn't inform you that the divorce terminates it. Or, as a matter of fact, it doesn't say that the death terminates it either. But it does tell you what to do when you marry after retirement, which is exactly what our facts are suggesting. Counselors, you see your red light is on, and so your argument is terminated. Thank you very much, Your Honor. Ms. Boback, who has some rebuttal time. Two and a half minutes. To answer your question, Justice Walsh, I looked through the records, and it was in my notes where Roxiliana indicated that she faxed those specific documents to Judge Packard in the underlying decision. They were supplemented to the board, but there's no record that Judge Packard had it. She didn't mention them in her decision. Is that faxed in the record somewhere? The fax that Roxiliana had them faxed them to Judge Packard is not in the record anywhere. It didn't become part of the record until she retained counsel and that decision was appealed. So they are in the record before the final order. The documents that she faxed are in the record? Yes. Where are they in the record? Oh, I'm sorry. They're in the record. On page A42, there is an index of the four documents that Roxiliana had faxed to Judge Packard and pursuant to the record, her counsel had sent them to the board. And the board had indicated in their decision that they had a complete record at this point, and they had access to these documents, and they too found that there was no intent by Myron. And your question regarding the intent of Myron, when we look at the intent, is something that I agree with counsel when she says you have to look at the overall intent. Because he was not given notification regarding what he had to do as far as naming his wife other than send in a copy of his documents. And he did send in a copy of his documents, and it was clear that he wanted Roxiliana to be his beneficiary. As counsel had suggested, he had mentioned it over and over and over again in all of his correspondence. And I think the final order ignores that. The final order indicates very clearly that there is no outside intent by Mr. Dasznowski to name Roxiliana. And apparently they're looking at that two-year time period where if he hasn't done anything in two years, his time is over and there is no other alternative for him to name a new beneficiary. And I don't believe that's supported by the case law. I believe the case law clearly says that there is an exception, and that exception is to look at the intent. Thank you, Ms. Boback. We'll take the case under review.